**UNITED STATES DISTRICT OURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CARLOS ROBERTO,

               Plaintiff,

-vs-

ADDISON PLACE APARTMENTS PROPERTY OWNER LLC, JRK RESIDENTIAL GROUP, INC., and I.Q. DATA INTERNATIONAL, INC.,

               Defendants.

CASE NO.: 0:23-cv-61579-WPD

## MOTION TO SEVER COUNTERCLAIM

Plaintiff, Carlos Roberto ("Plaintiff"), by and through undersigned counsel, hereby requests that this Honorable Court enter an Order severing the Defendant, Addison Place Apartments Property Owner LLC's ("Addison Place") Counterclaim, ECF No. 34, and in support thereof states:

### I.      FACTUAL PROCEDURAL BACKGROUND

Plaintiff filed the instant action on August 16, 2023 asserting violations of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA"). ECF No. 1. By way of brief background, Plaintiff entered into the residential lease agreement with Addison Place and JRK Residential Group, Inc. ("JRK"). *Id*. at ¶ 8. Plaintiff paid a $500 security deposit when the lease was executed. *Id*. at ¶ 9. Plaintiff resided in the property for two lease renewal periods, but timely vacated the property on or about February 6, 2023. *Id*. at ¶ 12, 14. Plaintiff cleaned and repaired the apartment before moving out and made material improvements to the apartment, as

JRK refused to rectify defects and damages within the apartment that had been present during Plaintiff's entire tenancy. *Id*. at ¶ 17.

Following Plaintiff's vacation of the property, he established a forwarding address at the post office and informed Addison Place and JRK of the same. *Id*. at ¶ 18. However, Addison Place and JRK failed to return Plaintiff's security deposit or notify him in writing of their intention to impose a claim on the security deposit pursuant to Florida Statute § 83.49(3)(a). *Id*. at ¶ 19. Instead, Addison Place and JRK kept the security deposit and imposed $1,391 in charges onto Plaintiff's account despite knowing that the apartment had no damages beyond reasonable wear and tear and that they did not follow Florida's landlord tenant law. *Id*. at ¶ 19-20.  Addison Place and JRK then hired Defendant, I.Q. Data International, Inc. ("I.Q. Data") to collect the illegitimate $1,391 from Plaintiff. *Id*. at ¶ 11.

The crux of Plaintiff's Complaint against Addison Place is that it, through its agent, JRK, attempted to collect a debt it knew it had no legal right to charge or collect because it kept Plaintiff's security deposit, failed to comply with Florida's landlord tenant law, and knew the apartment had no damages beyond reasonable wear and tear. *Id*. at ¶ 21.

On October 24, 2023, after this Court entered a Clerk's Default against Defendants, Addison Place and JRK, Addison Place filed an Answer and Counterclaim seeking to collect the alleged debt and asserting a single cause of action for breach of contract. ECF No. 34 ¶¶ 18 – 28. The Answer and Counterclaim was filed while Addison Place was in default. The same has not been re-filed with this Court following the Court's Omnibus Order Vacating Clerk's Entries of Default entered on October 27, 2023. ECF No. 40. Further, this Court did not issue an Order advising that the Answer and Counterclaim were filed. Thus, Plaintiff was uncertain as to the status

of the responsive deadlines to the Counterclaim. Notwithstanding, Plaintiff seeks to have the Counterclaim severed for the reasons stated below.

II.     **MEMORANDUM OF LAW**

a.  **Compulsory v. Permissive Counterclaims.**

Fed. R. Civ. P. Rule 13 provides for "compulsory" and "permissive" counterclaims, stating in part:

> **(a) Compulsory Counterclaim.**
> (1)  *In General*. A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>> (A)  arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>> (B)  does not require adding another party over whom the court cannot acquire jurisdiction.
>
> (b) **Permissive Counterclaim.** A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

Fed. R. Civ. P. Rule 13(a), (b); *see also* Fla. R. Civ. P. 1.170(a), (b).

"[T]he appropriate test for determining whether a counterclaim rises out of the transaction or occurrence which is the subject matter of the opposing party's claim, and is thus compulsory, is the "logical relationship" test." *Republic Health Corp. v. Lifemark Hosps. Of Fla., Inc*., 755 F. 2d 1453, 1455 (11th Cir. 1985); *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir. 1980); *Neil v. South Florida Auto Painters, Inc*., 397 So. 2d 1160, 1164 (Fla. Dist. Ct. App. 3d Dist. 1981). Both Florida courts and the Eleventh Circuit have adopted the logical relationship test to determine whether a cause of action is a permissive or compulsory counterclaim. The Eleventh Circuit has stated:

> Under this test, there is a logical relationship when "the same operative facts serve as the basis of both claims or the aggregate core

>of facts upon which the claim rests activates additional legal rights,
>otherwise dormant, in the defendant.

*Republic Health Corp. v. Lifemark Hosps. Of Fla., Inc.*, 755 F. 2d 1453, 1455 (11th Cir. 1985) (citing *Plant v. Blazer Financial Services, Inc.*, 596 F.2d 1357, 1361 (5th Cir. 1979); *see also Equity Residential Props. Trust v. Yates*, 910 So.2d 401, 404 (Fla. 4th DCA 2005) (stating that a logical relationship exists when "(1) the same aggregate of operative facts serves as the basis for both claims; or (2) the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant").

By the "logical relationship" standard, "an action to collect a consumer debt is not a compulsory counterclaim to an action under a statute regulating consumer collection practices." *Whigum v. Heilig-Meyers Furniture*, 682 So. 2d 643, 646 (Fla. Dist. Ct. App. 1st Dist. 1996). The "bulk of authority on the issue holds that actions to collect debts are not compulsory counterclaims to actions predicated on the violation of consumer protection type laws." *Equity Residential Props. Trust v. Yates*, 910 So. 2d 401, 404 (Fla. Dist. Ct. App. 4th Dist. 2005). Ultimately, courts have routinely held that FDCPA and FCCPA claims are not compulsory counterclaims because "[a]n FDCPA claim concerns the <u>method</u> of collecting the debt … [and] does not arise out of the transaction creating the debt…." *O'Driscoll v. Arbor Grove Condominium Association, Inc.*, Case No. 8:22-cv-1984-VMC-JSS, 2023 WL 3197877, at *4 (M.D. Fla. May 2, 2023) (citing *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D. Fla. 1995) (emphasis added); *see also France v. Ditech Fin., LLC*, No. 8:17-cv-3038-SCB-MAP, 2018 WL 1695405, at *8 (M.D. Fla. Apr. 6, 2018) (finding FDCPA and FCCPA claims were not compulsory counterclaims in state court foreclosure action); *Roban v. Marinosci Law Grp.*, Case No. 14-60296, 2014 WL 3738628, at *3 (S.D. Fla. July 29, 2014) (collecting cases rejecting FDCPA compulsory counterclaim argument)).

In the instant case, the actions alleged by Addison Place in its Counterclaim do not arise out of the same aggregate set of operative facts because Plaintiff's claims are based on the method of collecting the debt, not out of the transaction which created the debt itself. In *Whigum* the First District Court of Appeal of Florida stated that:

> The debtor's action under the statute is based on the commission of prohibited debt collection practices, and the creditor's action on the debt is based on the failure to pay for consumer goods sold on credit. Furthermore, the filing of one action does not "activate" the filing of the other in a circumstance in which the second action might otherwise remain dormant… The two actions do not depend on each other.

*Whigum* at 646*; see also Hall v. W.S. Badcock Corporation*, 19 Fla. L. Weekly Supp. 291a (Fla. 13th Cir.) (holding that in an FCCPA case, a Defendant's counterclaim for breach of contract "does not arise out of the same transaction or occurrence that is the subject matter of the Plaintiff's cause of action for violations under the FCCPA, and is therefore a permissive counterclaim pursuant to Fla. R. Civ. P. 1.170(b)" and thus, severing the claims (citing *Mulattieri v. General Motors Acceptance Corp.*, 15 Fla. L. Weekly Supp. 228a (Fla. 13th Cir. Ct. App. Jan. 2, 2008)).

As in *Whigum*, and in several other cases previously cited before this Court, the essence of Plaintiff's lawsuit against Addison Place is solely related to Addison Place's methods of collecting an alleged debt. Plaintiff's Complaint makes it clear that Plaintiff alleges Addison Place knew it had no legal right to charge or collect the alleged debt because it kept Plaintiff's security deposit, failed to comply with Florida's landlord tenant law, and knew the apartment had no damages beyond reasonable wear and tear. ECF No. 1 at ¶ 21. Plaintiff's allegations go directly to the issue of whether Addison Place violated the FCCPA when it employed an illegal method of collection of the alleged debt. *Id*.

Moreover, in *O'Driscoll v. Arbor Grove Condominium Association*, Judge Virginia M. Hernandez Covington of the Middle District of Florida, Tampa Division analyzed almost identical issues as those in this case. In that case, O'Driscoll initiated an FDCPA and FCCPA suit against Arbor Grove and its contracted collection counsel, RPM, on August 29, 2022. *O'Driscoll v. Arbor Grove Condominium Association, Inc.*, Case No. 8:22-cv-1984-VMC-JSS, 2023 WL 3197877, at *1 (M.D. Fla. May 2, 2023). O'Driscoll's lawsuit alleges that Plaintiff was fined by Arbor Grove for "alleged problematic behavior," resulting in fines being turned over to RPM for collection. *Id*. Plaintiff was sued by Arbor Grove and RPM relative to the alleged debt in state court. *Id*. In turn, O'Driscoll filed his FDCPA and FCCPA lawsuit in federal court. *Id*. The FDCPA and FCCPA claims stem from two letters sent by Arbor Grove and RPM demanding payment of the fines and attorney's fees and that Arbor Grove and RPM would pursue "additional collection activities" if O'Driscoll did not pay the amount allegedly owed. *Id*.

As in this case, O'Driscoll asserted in an Amended Complaint that Arbor Grove and RPM violated the FCCPA in part by asserting the existence of a legal right to collect a debt that they knew did not exist. *Id*. Arbor Grove and RPM filed a Motion to Dismiss asserting, in part, that O'Driscoll's FDCPA and FCCPA claims are compulsory counterclaims to the state court action. *Id.* at *2, *4. Ultimately, Judge Hernandez Covington correctly concluded that O'Driscoll's claims were not compulsory counterclaims in the state court action because his claims for debt collection violations did not arise out of the same transaction as the one on which the state court action was premised.

As in *O'Driscoll*, this Court must find that Addison Place's claims are not compulsory counterclaims because the Plaintiff's claims for debt collection violations are separate and apart from those raised by Addison Place's Counterclaim. Under Florida and federal law, it is clear that

an action to collect a consumer debt is not a compulsory counterclaim and the Counterclaim filed by Addison Place is a permissive counterclaim. Thus, this Court must sever the Counterclaim.

> **b. Failing to Sever the Permissible Counterclaim would Contravene the FCCPA's Purpose.**

The FCCPA, by its own terms, "is in addition to the requirements and regulations of the" Fair Debt Collection Practices Act, 15 U.S.C. § 1601 et seq. ("FDCPA"). Fla. Stat. § 559.552. The FCCPA further states that "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the [FDCPA]." Fla. Stat. § 559.77(5). The purpose of the FDCPA includes the elimination of abusive debt collection practices by debt collectors, ensuring that those debt collectors who refrain from using abusive practices are not competitively disadvantaged, and the promotion of consistent state action to protect consumers against debt collection abuses. 15 U.S.C. § 1692.

"Similarly, the FCCPA, Florida's consumer protection statute, was enacted as a means of regulating the activities of consumer collection agencies within the state. 'The FCCPA is a laudable legislative attempt to curb what the legislature evidently found to be a series of abuses in the area of debtor-creditor relations.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 10A FLA. JUR.2D CONSUMER § 138 (2010)).

The FCCPA, similarly to the FDCPA, both provide for actual and statutory damages, together with court costs and reasonable attorney's fees incurred by the plaintiff. Fla. Stat. § 559.77, 15 U.S.C. § 1692k(a)(3). These provisions of the FCCPA and FDCPA mandate these awards "as a means of fulfilling Congress's intent that the [FDCPA] should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991),

*disapproved of by Hall v. Nationstar Mortg.*, LLC, 255 F. Supp. 3d 625 (E.D. Pa. 2015) (internal

citations omitted).

> "The Florida legislature enacted the FCCPA as a means of regulating debt collection practices. In addition to eradicating abusive practices, the FCCPA aims to protect each consumer's right to privacy. If these goals are to be reached, consumer collection agencies must appreciate the real penalties for violating the FCCPA. Otherwise, the FCCPA will have little to no deterrent effect. If a consumer collection agency knows that it can engage in harassing and obnoxious debt collection practices with the best outcome being that it squeezes money from consumers and the worst being that the consumer's debt is merely reduced by penalties imposed under the FCCPA—with no money ever coming out of the collection agency's pocket—the collection agency will have no reason to play by the rules."

*In re Runyan*, 530 B.R. 801, 808–09 (Bankr. M.D. Fla. 2015).

Regardless of the validity of Addison Place's Counterclaim or underlying debt, allowing

the Counterclaim to proceed would undermine the purposes of the FCCPA, including undermining

a Plaintiff's ability to police the bad actions of debt collection agencies. Plaintiffs traveling under

the FCCPA are meant to act as "private attorneys general" in policing the bad acts of collection

agencies and other entities collecting debts in Florida, a right which Plaintiff is attempting to

exercise. Addison Place's Counterclaim is nothing more than an effort to deter Mr. Roberto from

protecting his rights under the FCCPA, which requires this Court to sever the Counterclaim.

### III.   CONCLUSION

Because the counterclaim proposed by Addison Place is permissive and not compulsory, it

can be severed from the main claim and does not impair the court's ability to resolve the main

claim in a single lawsuit. The Counterclaim is permissive and not compulsory and can be severed

without impairing this Court's ability to resolve the FCCPA claims.

Dated: December 1, 2023

*/s/ Sarah Cibula Feller*
Darren R. Newhart, Esq.
FL Bar No: 0115546
Sarah Cibula Feller, Esq.
E-mail: darren@newhartlegal.com
        sarah@newhartlegal.com
**Newhart Legal, P.A.**
14611Southern Blvd. Suite 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile: (561) 473-2946

*/s/ Joshua Feygin*
Joshua Feygin, Esq.
FLORIDA BAR NO: 124685
Email: Josh@JFeyginesq.com
**Sue Your Dealer – A Law Firm**
1930 Harrison Street Suite 208 F
Hollywood, FL 33020
Telephone: (954) 228-5674
Facsimile: (954) 697-0357

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff conferred with counsel for Defendant as it relates to the relief sought within this Motion. Defendant opposes Plaintiff's requested relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of December, 2023, a copy of the foregoing was electronically filed via CM/ECF for the United States District Court for the Southern District of Florida. Copies provided to all counsel of record.