UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61579-WPD

CARLOS ROBERTO,

       Plaintiff,

v.

ADDISON PLACE APARTMENTS
PROPERTY OWNER LLC, JRK
RESIDENTIAL GROUP, INC., and
I.Q. DATA INTERNATIONAL, INC.,

       Defendants.
_____/

## RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION TO SEVER COUNTERCLAIM

Defendant Addison Place Apartments Property Owner LLC ("Addison Place"), through undersigned counsel, hereby files its Response in Opposition to Plaintiff Carlos Roberto ("Plaintiff")'s Motion to Sever Counterclaim [DE:58].

On December 1, 2023, Plaintiff moved to sever Addison Place's Counterclaim on the grounds that (1) it is not a compulsory counterclaim, and (2) not severing the counterclaim would contravene the FCCPA's purpose [DE:58 at 3 ,7]. Plaintiff's Motion to Sever should be denied because an analysis of the factors used to determine whether claims should be severed weigh in favor of keeping the claims together in one case. Additionally, the counterclaim is compulsory and does not frustrate the purpose of the FCCPA.

**PROCEDURAL HIISTORY**

Plaintiff filed his Complaint [DE:1] against Addison Place, JRK Residential, and I.Q. Data after I.Q. Data attempted to collect a legitimate debt from Plaintiff. Plaintiff lived at Addison Place, an apartment complex managed by JRK Residential. After Plaintiff vacated his apartment, apartment staff conducted its standard inspection and found numerous damages in need of cleaning and repair. Thus, Addison Place and JRK Residential retained Plaintiff's security deposit pursuant to the Lease Agreement and imposed charges on Plaintiff's account for the remainder of the costs of cleaning and repair. The notice of intent to retain the security deposit and a breakdown of the cleaning and repair costs were mailed to Plaintiff's last known address on file. Plaintiff failed to pay the balance on his account, and the debt was referred to I.Q. Data for collection. *See* Addison Place's Answer and Affirmative Defense and Counterclaim [DE:34].

In his Complaint, Plaintiff alleges that I.Q. Data violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e *et seq* (Counts III and IV). Plaintiff alleges that Addison Place and JRK Residential violated the Florida Consumer Collection Practices Act, § 559.72(9), Fla. Stat. (Counts I and II). Plaintiff claims this Court has supplemental jurisdiction over the state law claims against Addison Place because they are part of the same case and controversy as the federal claims. Compl., ¶ 6.

In addition to his allegations that Addison Place did not properly notify him of its intent to retain the security deposit, Plaintiff puts the ***condition*** of the apartment—and therefore the legitimacy of the debt—at issue throughout the Complaint. Plaintiff alleges that when he moved into the apartment, "numerous defects and damages were found" and that Addison Place "did not fix or repair the defects and damages the apartment." Compl., ¶¶ 10-11. Plaintiff also alleges that

he "cleaned and repaired the apartment before moving out" and "made material improvements to the apartment." *Id*. ¶ 17. Plaintiff claims that Addison Place had no right to keep the security deposit and that he "did not owe [the] amount" on his account because Plaintiff purportedly repaired such damages. *Id*. ¶ 21. Thus, according to Plaintiff, Addison Place "had no legal right to charge or collect the $1,391 from Plaintiff" because Addison Place allegedly knew the apartment "had no damages beyond reasonable wear and tear." *Id*. ¶¶ 35, 52.

However, Plaintiff's claims that he adequately cleaned and repaired the apartment before leaving, and thus he did not owe the amount imposed on his account and debt on his account is illegitimate, are not true. As part of its Answer to Plaintiff's Complaint, therefore, Addison Place filed a Counterclaim against Plaintiff for breach of contract [DE:34 at 8]. Addison Place seeks the amount imposed on Plaintiff's account—an amount that Plaintiff, in his own Complaint, alleges is illegitimate.

## MEMORANDUM OF LAW

### I. STANDARD FOR SEVERING CLAIMS

Fed. R. Civ. P. 21 allows the court to sever any claim against any party where justice so requires. In determining whether to do so, courts weigh several factors: "whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied." *Gonzalez v. Batmasian*, 320 F.R.D. 580, 581 (S.D. Fla. 2017). This standard is notably absent from Plaintiff's Motion to Sever, and all four factors weigh in favor of denying the Motion.

First, as described further below, Plaintiff put the legitimacy of the debt—not just the method of its collection—at issue throughout his Complaint. Whether or not the debt was

3

legitimate and in fact owed by Plaintiff centers on the condition in which Plaintiff left the apartment before vacating. Plaintiff claims that he left the apartment in adequate condition and therefore he does not owe Addison Place anything. Comp., ¶ 21. Addison Place's position, which it can corroborate with photographs, is that Plaintiff left the apartment with damages, and thus it had every right to seek payment under the Lease Agreement. Thus, the case involves the same questions of fact, and the claims stems from the same, single series of events: from the time Plaintiff vacated his apartment, did he comply with the lease by providing the correct forwarding address and leaving the apartment in adequate condition?

Further, denying severance is certainly in the interest of judicial economy. Plaintiff's Complaint and Addison Place's Counterclaim will involve the same witnesses, the same photographs, the same Lease Agreement, and the same timeline of events. *See Gonzalez*, 320 F.R.D. at 581 (explaining that efficiency favors a single trial where the parties intend to call many of the same witnesses). These witnesses will include Plaintiff and individuals from the apartment complex who would have knowledge of Plaintiff's actions upon his vacating the premises. There is no need for the same trial to happen twice. Nor would Plaintiff be prejudiced by trying the claims together; if the counterclaim is severed and Addison Place files a claim for breach of contract in state court, Plaintiff would still have to spend the same time and resources defending against that suit as it would against the counterclaim. Trying the cases together will save both parties—as well as the court—time and resources. For these reasons, Plaintiff's Motion should be denied.

    II.       THE COUNTERCLAIM IS COMPULSORY

A counterclaim is compulsory if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claims" and "does not require adding another party

over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). The second prong is clearly met, but Plaintiff argues that the first prong is not. Specifically, Plaintiff argues that the counterclaim is not compulsory because "Plaintiff's claims are based on the method of collecting the debt, not out of the transaction which created the debt itself." [DE:58 at 5]. Plaintiff cites Florida's First District Court of Appeals' decision in *Whigum v. Heilig-Meyers Furniture*, 682 So. 2d 643 (Fla. 1st DCA 1996). Plaintiff's argument fails for two reasons.

First, Plaintiff's argument fails based on the facts alleged in his own Complaint, which puts the "transaction which created the debt itself" at issue. Throughout his Complaint, Plaintiff alleges that he does not owe the debt to begin with because, according to Plaintiff, when he moved in there were existing defects (Compl., ¶10), he asked Addison Place to fix those defects and they refused (*Id.*, ¶ 11) and he made repairs to the apartment before vacating it (*Id.* ¶17). He therefore claims that Addison Place "had no legal right to charge or collect the $1,391 from Plaintiff" because Addison Place allegedly knew the apartment "had no damages beyond reasonable wear and tear." *Id.*, ¶¶ 35, 52.

These facts are different from *Whigum*. In *Whigum*, the furniture store put a notice on the plaintiff's door advising that it was demanding the return of the furniture the plaintiff bought on credit and failed to pay for thereafter. Plaintiff here is correct in its analysis of *Whigum* in that there, the issue revolved solely on the method of collecting the debt, and not the legitimacy of the debt. Here, however, Plaintiff does not only argue that Addison Place's method of collecting the debt was improper; Plaintiff argues that the debt itself was illegitimate based on the condition of the apartment when he vacated it. Thus, Plaintiff's argument that the Complaint is "based on the method of collecting the debt, not out of the transaction which created the debt itself" [DE:58 at 5] is belied by the Complaint.

5

Second, any argument Plaintiff makes that the legitimacy of the debt is ***not*** connected to the collection practices—that it does "not arise out of the same aggregate set of operative facts" [DE:58 at 5]—is contradicted by the fact that Plaintiff's claim against Addison Place is brought before this Court on supplemental jurisdiction. Compl., ¶ 6 (wherein Plaintiff claims "the facts giving rise to Plaintiff's state law claims form the same case and controversy as the fact giving rise to the FDCPA claim). In order to bring a state claim in federal court on supplemental jurisdiction under 28 U.S.C. § 1367, the federal and state claims must derive from a "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

After alleging that Plaintiff did not owe the amount placed on his account because the apartment "had no damages beyond reasonable wear and tear," (Compl., ¶ 21) Plaintiff then alleges that Addison Place hired I.Q. Data "to collect the illegitimate debt." *Id*., ¶ 22. In Plaintiff's first claim against I.Q. Data (Count III, under the FDCPA), Plaintiff alleges that I.Q. Data tried to "collect an alleged debt from Plaintiff by parking an illegitimate debt on Plaintiff's credit report and calling Plaintiff to collect an illegitimate debt." *Id*. at ¶ 60. In his second claim against I.Q. Data (Count IV, under the FDCPA) Plaintiff alleges that I.Q. Data "used unfair and unconscionable conduct when trying to collect an alleged debt from Plaintiff by parking the illegitimate debt on Plaintiff's credit report and calling Plaintiff to collect an illegitimate debt" and "attempted to collect a known non-existent debt from Plaintiff that was not permitted by law or agreement." *Id*. at ¶¶ 66-67.

Thus, Plaintiff connects the dots between the legitimacy of the debt—*i.e.*, whether Plaintiff owes the debt at all—with I.Q. Data's collection practices. Plaintiff cannot argue that the collection practice and legitimacy of the debt are part of the same series facts and circumstances for purpose of supplemental jurisdiction, but argue that they are not part of the same series of

6

facts and circumstances for purposes of the motion to sever. Either they are connected, or they are not.

In order to fully defend against Plaintiff's allegations, Addison Place filed its counterclaim alleging that the claim was legitimate and is still owed. Addison Place should be permitted to maintain its Counterclaim, and the Motion to Sever should be denied.

### III.  THE COUNTERCLAIM DOES NOT FRUSTRATE THE PURPOSE OF THE FCCPA

Plaintiff's argument that the counterclaim is "nothing more than an effort to deter Mr. Roberto from protecting his rights under the FCCPA" (Motion at 8) is without merit for several reasons. First, Plaintiff does not cite a single case that supports severance as the appropriate remedy under these circumstances, or that severing the counterclaim would in any way further the goals of the FCCPA. Plaintiff cites several cases that generally describe the legislative intent behind the FCCPA and FDCPA, but none of these cases stand for the proposition that counterclaims asserting legitimate debts frustrate their purpose.

For example, Plaintiff cites *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010). That case had nothing to do with severance of a counterclaim and instead concerns the applicability of collection practice statutes and factual disputes for purposes of a motion for summary judgment.[1] Plaintiff also cites *In re Runyan*, 530 B.R. 801, 808-09 (Bankr. M.D. Fla. 2015). There, the issue was whether the creditor violated the FCCPA by calling the debtor even

---

[1] In explaining the FCCPA, the Eleventh Circuit in *LeBlanc* noted that the "FCCPA prohibits a debt collector from 'asserting the existence of [a] legal right when such **person knows that the right does not exist**.'" *Id*. at 1192 (emphasis added). As outlined above, there is clearly a dispute between the parties as to the legitimacy of the debt; Plaintiff claims Addison Place knew the right exist, but Addison Place argues that the debt was legitimate.

though the creditor knew the debtor was represented by counsel. Unlike in this case, *In re Runyan* only concerned the method of collection and not the legitimacy of the underlying debt.

As a practical matter, severing (or not severing) the counterclaim would not have any effect on Plaintiff's right or ability to pursue a claim under the FCCPA. Severance does not result in dismissal—it only results in the matters being tried separately. Again, trying the cases separately would only result in unnecessary duplicative efforts and the expenditure of additional time, resources, and attorneys' fees. Addison Place therefore respectfully requests this Court deny Plaintiff's Motion to Sever.

## CONCLUSION

Because the factors weigh in favor of denying the Motion to sever, the counterclaim is compulsory, and keeping the claims together in one matter would not frustrate the purposes of the FCCPA, this Court should deny Plaintiff's Motion to Sever.

Dated: December 15, 2023

TACHE, BRONIS & DESCALZO, P.A.
150 SE Second Avenue Suite 600
Miami, Florida 33131
T: 305-537-9565
F: 305-537-9567

By: /s/ *Walter J. Tache*
**Walter J. Tache, Esq.**
Fla. Bar No. 0028850
wtache@tachebronis.com
service@tachebronis.com
**Alyssa M. Altonaga, Esq.**
Fla. Bar No. 1025089
aaltonaga@tachebronis.com
service@tachebronis.com

## **CERTIFICATE OF SERVICE**

I CERTIFY that on December 15, 2023, the foregoing document was electronically filed via CM/ECF which will serve all counsel of record.

/s/ *Walter J. Tache*
**Walter J. Tache, Esq.**