**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO. 0:23-CV-61579-WPD**

CARLOS ROBERTO,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
ADDISON PLACE APARTMENTS　　　)
PROPERTY OWNER LLC, JRK　　　　)
RESIDENTIAL GROUP, INC., and IQ　)
DATA INTERNATIONAL, INC.,　　　　)

　　　　　　　　Defendants.

**<u>PLAINTIFF'S VERIFIED MOTION FOR ATTORNEY'S FEES AND COSTS</u>**

Plaintiff, Carlos Roberto, seeks an award of reasonable attorney's fees and costs under the

Florida Consumer Collection Practices Act ("FCCPA") and the lease agreement with Addison Place

Apartments Property Owner LLC ("Addison") and JRK Residential Group, Inc ("JRK"). Mr. Roberto

is the prevailing party, having successfully prosecuted claims against Addison and JRK, and

successfully defended against Addison's meritless counterclaim. Despite several opportunities to

resolve this matter, Addison and JRK pursued a litigation strategy that significantly drove up Mr.

Roberto's legal fees. Mr. Roberto's counsel now seeks reimbursement for the substantial time and

resources expended to successfully prosecute these claims.

On July 16, 2024, the Court entered an order finding that "Plaintiff is the prevailing party

under the FCCPA against Defendants JRK and Addison, and the prevailing party on Defendant

Addison's counterclaim." ECF No. 111 at p. 2 ¶ 3. It also retained "jurisdiction over the settlement

agreement and for purposes of considering any motion for attorneys' fees and costs…." *Id.* at ¶ 4.

Accordingly, this motion is timely, filed within sixty (60) days of the order giving rise to the claim for

attorney's fees. Local Rule 7.3(a)(1)-(2).

1

As outlined below, both the FCCPA and the lease agreement authorize the shifting of attorney's fees. Newhart Legal, P.A., and Joshua Feygin, PLLC, seek a total of $54,667.75 in attorney's fees, which includes a voluntary 15% reduction of $9,647.25 from the total amount incurred. Local Rule 7.3(a)(3). The applicable fee agreement is attached as Exhibit "A," in accordance with Local Rule 7.3(a)(4).

Accompanying this motion are affidavits from Attorneys Darren Newhart and Joshua Feygin, attached as Exhibits "B" and "C." These affidavits, along with detailed time records, provide all required information, including the identity, experience, and qualifications of each timekeeper, the hours reasonably expended, task descriptions, and the hourly rates claimed. Local Rule 7.3(a)(5)(A)-(D). This motion also describes and documents all fees and expenses incurred that are not taxable under 28 U.S.C. § 1920, and is verified by both Attorneys Newhart and Feygin. Local Rule 7.3(a)(6)-(7).

Despite a good faith effort over several weeks to resolve the issue of attorney's fees and costs, the parties were unable to reach an agreement regarding hourly rates and hours expended, although taxable costs under § 1920 have been resolved.

## BACKGROUND

Mr. Roberto leased an apartment from Addison under a residential lease. Complaint ECF No. 1, at ¶ 8. The property was managed by JRK on Addison's behalf. *Id.* ¶ 28. Before moving in, Mr. Roberto handed over a $500 security deposit as required by the lease. *Id.* ¶ 9. After taking possession, he discovered several defects and damages, which were documented in an inventory and condition report. *Id.* ¶ 10. Throughout the tenancy, neither Addison nor JRK addressed these issues. *Id.* ¶¶ 11–12.

Before moving out of the apartment, Mr. Roberto cleaned the unit and made material improvements. *Id.* ¶¶ 14, 17, 20. Despite his efforts, Addison withheld the $500 security deposit and

slapped him with a $1,391 charge after he moved out. *Id.* ¶¶ 14, 17, 20. Addison and JRK then recruited IQ Data to collect the unpaid balance. *Id.* ¶¶ 21–24.

**Mr. Roberto is forced to sue Addison, JRK, and IQ Data.**

Mr. Roberto sued Addison and JRK for violating the FCCPA. They were served on August 21, 2023, but did not respond in a timely manner, prompting a show cause order. ECF No. 12. This delay led to two motions for clerk's entry of default, Pl.'s Motion for Default ECF Nos. 13-14, two motions for default judgment, ECF Nos. 23-24, and another show cause order. Order ECF No. 26.

Fourteen days later, Addison and JRK finally filed their answer and affirmative defenses, with Addison also counterclaiming for breach of contract. JRK's Answer and Affirmative Defenses ECF No. 33; Addison's Answer and Affirmative Defenses and Counterclaim ECF No. 34. Addison sought $1,391 in damages, prejudgment interest, as well as reasonable attorney's fees and costs from Mr. Roberto. *Id.* ¶ 28.

In the counterclaim, Addison alleged that the apartment had "numerous damages in need of cleaning or repair that were not reported in the Online Tenant Portal, in violation of the Lease Agreement." ECF No. 34, Addison's Counterclaim, at p. 7 ¶ 11. Addison claimed it had to replace the carpet, repaint walls, and clean various fixtures, which were supposedly documented in a statement sent to Mr. Roberto's last known address. *Id.* at ¶¶ 12-13.[1]

But through extensive discovery and motion practice, it became evident that Addison's claims in the counterclaim and answer were baseless. See Pl.'s Motion to Compel Better Responses and Overrule Objections, ECF No. 86; ECF No. 94. For example, Mr. Roberto's counsel contacted the apartment's prior tenant, who confirmed that the unit was in such poor condition that she refused to move in. Plt.'s Statement of Material Facts ECF No. 127, at ¶¶ 1-10; Carol Stern Aff. ECF No. 127-

---

[1] Mr. Roberto responded to the counterclaim. ECF Nos. 58; 64-65; 80-82. Addison and JRK also twice moved to set aside the default, ECF Nos. 35; 37, which the Court granted. ECF No. 40.

3, at ¶¶ 6-14. Addison also eventually confirmed, after reaching a settlement, that it had made no improvements or repairs before Mr. Roberto's tenancy, like replacing the carpet. See Resp. to Written Questions, ECF No. 127-20, at ¶¶ 9-11. Thus, Addison's claim that it replaced the carpet was false—the carpet had not been replaced since October 27, 2016, and JRK's own representatives had documented the damage in the inventory and condition report when Mr. Roberto moved in. Id. at ¶ 10; Inventory and Condition Form, ECF No. 127-9; Roberto Aff. ¶ 7; Resp. to Written Questions, ECF No. 127-20, at ¶ 13; Carlos Roberto Dep., ECF No. 123-5, at 67:01–71:09.

Addison's other assertions on key events were also false. Mr. Roberto submitted multiple work orders requesting repairs and carpet replacement during his tenancy. See Plt.'s Statement of Material Facts, ECF No. 127, at ¶¶ 36-49. Furthermore, Addison never mailed the required certified notice of intent to withhold Mr. Roberto's security deposit. *See* Addison Ans. and Affirm. Defenses, ECF No. 34, at ¶ 13; Roberto Aff. ¶ 46; Resp. to Written Questions, ECF No. 127-20, at ¶¶ 19-21.

To obtain this critical information, Mr. Roberto had to compel discovery from Addison and JRK, requiring the Court's intervention. ECF Nos. 86, 89. Armed with this information, Mr. Roberto's counsel scheduled the depositions of Addison and JRK's corporate representatives. Despite extensive preparation by Mr. Roberto's counsel, Addison and JRK canceled the deposition the night before, requiring another discovery hearing. ECF Nos. 95-96.

At bottom, Addison and JRK were fully aware of the above facts when they filed their counterclaim against Mr. Roberto but pursued the litigation regardless, driving up attorney's fees and costs for both the FCCPA claim and the defense of the counterclaim. Their actions reflect a calculated strategy to leverage litigation costs and pressure Mr. Roberto into a hasty settlement, rather than addressing the merits of the case.

**Addison and JRK refused reasonable settlement attempts.**

The parties participated in mediation with Mediator Gregory Holder, but no settlement was

reached. ECF No. 78. On November 28, 2023, Mr. Roberto made a global settlement demand to all Defendants of $20,000 in damages and $27,000 in attorney's fees and costs, but the offer was refused. On May 13, 2024, Defendants made a global offer of $15,000, inclusive of all damages and attorney's fees and costs. On or about May 22, 2024, Mr. Roberto extended another settlement offer to Addison and JRK *only*, which was met with silence. Instead, Addison and JRK issued Rule 68 offers of judgment. See ECF Nos. 68-69.

After months of litigation, and the hearing caused by Addison and JRK's refusal to appear at their mutually scheduled deposition, on or about June 5, 2024, Mr. Roberto again engaged in settlement discussion with Addison and JRK. Over the next five days, the parties discussed settlement. On June 10, 2024, Mr. Roberto, Addison, and JRK reached a settlement, sparking several other motions before the Court granted it. ECF Nos. 105-111.

Since the parties reached a settlement, Mr. Roberto has made repeated efforts to resolve the issue of attorney's fees and costs. On June 12, 2024, Mr. Newhart provided detailed time and cost records from Newhart Legal, P.A. and Joshua Feygin, PLLC to Mr. Tache, showing total fees of $54,467. In a good-faith attempt to settle, they offered a 10% reduction, lowering the amount to $49,020.30. This reasonable offer was flatly rejected.

As a result, Mr. Roberto was forced to prepare a comprehensive motion for reasonable attorney's fees, spending much time gathering and presenting all necessary evidence to support the requested amount and hourly rate. Even after this additional work, Mr. Roberto's counsel shared the draft motion with Addison and JRK in another attempt to settle.

Despite these ongoing efforts, including an offer to further reduce the fees by 25%, Addison and JRK remained unreasonable, insisting on a 50% reduction. Their refusal to negotiate in good faith has left Mr. Roberto with no choice but to continue litigating the matter.

Addison and JRK have adopted a scorched-earth strategy throughout this litigation, forcing

Mr. Roberto to incur substantial legal fees in his efforts to hold them accountable for their FCCPA violations. The attached detailed time records, along with supporting affidavits from each attorney, demonstrate the reasonableness of the hours expended. Mr. Roberto's attorneys seek a total of $54,667.75, which includes a 15% reduction ($9,647.25) from the overall amount that was incurred.

## MEMORANDUM OF LAW

Under the "American Rule," each party must pay its own attorney's fees, unless a statute or contract provides otherwise. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010). Here, the FCCPA and the lease authorize fee shifting. The FCCPA allows recovery of "reasonable attorney's fees incurred by the plaintiff." Fla. Stat. § 559.72(9). And the lease allows the "prevailing party" to "recover from the non-prevailing party attorney's fees and all other litigation costs." ECF No. 34-1 Lease, at p. 7. Mr. Roberto is the "prevailing party" under the FCCPA and on Addison's counterclaim for breach of contract. Order Granting Motion to Dismiss Under Rule 41(a)(2) ECF No. 111, at ¶ 3 ("The parties stipulate that Plaintiff is the prevailing party under the FCCPA against Defendants JRK and Addison, and the prevailing party on Defendant Addison's counterclaim."); Stipulation and Settlement Agreement ECF No. 109-2, at ¶ 7.

"[T]he lodestar figure has become the guiding light of fee-shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). "Ideally...litigants will settle the amount of a fee," but when settlement is impossible, "[t]he most useful starting point for [to decide] the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

Under the Lodestar method, courts first determine an attorney's reasonable hourly rate, and then it multiplies that rate by the number of hours reasonably expended. See, e.g., *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299

6

(11th Cir. 1988). "[T]he court must next consider the necessity of adjustment for results obtained." *Norman*, 836 F.2d 1292. After considering the lodestar analysis, courts can fashion a reasonable fee award by considering the factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Roundtree v. Bush Ross, P.A.*, No. 814CV00357JDWAEP, 2016 WL 360721, at *2 (M.D. Fla. Jan. 28, 2016).

Courts may conduct an "hour-by-hour analysis" or "reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam). They can apply either method but not both. *Id.* The goal is to "do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011).

## I. Reasonable attorney's fees are crucial to fulfilling the FCCPA's consumer protection goals.

The FCCPA protects an important public interest, curbing "what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." *Harris v. Beneficial Fin. Co. of Jacksonville*, 338 So. 2d 196, 200–201 (Fla. 1976). Courts should construe the FCCPA "in a manner that is protective of the consumer." *Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 512–13 (Fla. Dist. Ct. App. 2007); Fla. Stat. § 559.77(5)("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") Thus, attorney's fee awards are critical to achieve the FCCPA's consumer protection purpose. *See Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 687 (7th Cir. 2022) (finding that attorney's fee awards under the FDCPA important to vindicate important public interests); see also *Fleet Inv. Co. v. Rogers*, 620 F.2d 792 (10th Cir. 1980) ("The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case, the public at large from this successful vindication of a national policy.")

## II. Reasonable Hourly Rate

The evidence supports that the following rates are reasonable.

$450 - Mr. Newhart.

$400 - Mr. Feygin.

$250 - Mrs. Feller.

**a.  Reasonable Hourly Standard**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. To establish this rate, the fee applicant must provide "satisfactory evidence" that reflects the rates billed and paid in similar cases. This requires more than just the affidavit of the attorney performing the work; it generally includes evidence of rates charged by other lawyers in comparable circumstances or expert opinions on reasonable rates. Prior court orders on reasonable rates, affidavits from other attorneys, or expert testimony can all serve as proof of prevailing market rates. See *Duval v. L. Off. of Andreu, Palma & Andreu, PL*, No. 09-22636-CIV-UNGARO, 2010 WL 2771859, at *2 (S.D. Fla. July 13, 2010). Once this evidence is presented, the burden shifts to the opposing party to demonstrate why the court should reduce the requested rates. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999). Prior orders on reasonable rate "may be used to demonstrate proof of prevailing market rates, as can affidavits of other attorneys or experts." *Duval*, 2010 WL 2771859, at *2.

The relevant legal market here is South Florida. *See Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). Courts in this district consistently find that rates between $225 and $500 are reasonable for attorneys in FDCPA and similar cases. Under the FCCPA, the Court must give "due consideration and great weight" to decisions under the FDCPA. Fla. Stat. § 559.77(5) ("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair

8

Debt Collection Practices Act.")

For instance, this Court in *Kleiman v. Wright* determined that a $500 hourly rate was reasonable for an attorney with eight years of experience, while $350 was appropriate for an attorney with three years of experience. *Kleiman v. Wright*, No. 18-80176-CV, 2020 WL 1980601, at *4 (S.D. Fla. Mar. 17, 2020). And in *All Web Leads, Inc. v. D'Amico*, the Court found $525 per hour reasonable for a co-managing partner and $400 per hour for a seven-year associate. *All Web Leads, Inc. v. D'Amico*, No. 18-CV-80571, 2019 WL 2051970, at *2 (S.D. Fla. May 2, 2019). Similarly, Judge Bloom found $400 per hour reasonable in an FDCPA case in *Gonzalez v. Dynamic Recovery Sols., LLC*, No. 14-CIV-20933, 2015 WL 738329, at *4 (S.D. Fla. Feb. 23, 2015). In a breach of contract case, the district court in *TYR Tactical, LLC v. Productive Prod. Enter., LLC* considered $500 per hour for senior partners, $450-$375 for junior partners, $275-$225 for associates, and $150 for paralegals to be reasonable. *TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *8–10 (S.D. Fla. Apr. 11, 2018). Additionally, in a fee-shifting case under the Driver's Privacy Protection Act, Judge Martinez found rates ranging from $400 for associates to $600 for a senior partner to be reasonable. *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINE, 2009 WL 9054828, at *7–8 (S.D. Fla. Jan. 20, 2009).

### b. Christopher Legg Esq. has testified that the rates and hours sought are reasonable.

Mr. Legg is a recognized authority on attorney fee rates in consumer protection cases in the Southern District of Florida. Exhibit "D." Mr. Legg has litigated thousands of cases under consumer protection statutes like the FCCPA, establishing himself as an expert in this field. His expertise in attorney fee rates is well-documented, and he has been consistently qualified as a fee expert.

In his testimony, Mr. Legg affirmed that a reasonable hourly rate for Mr. Newhart is $450, for Mr. Feygin $400, and for Mrs. Feller $250. These rates, he emphasized, reflect the prevailing market rates for attorneys with comparable experience and skills in the Southern District of Florida. Mr. Legg

also testified that the hours sought are reasonable given the history of litigation in this case. His testimony, grounded in this specialized practice, provides compelling support for the reasonableness of these rates and hours.

### c. Attorney Darren Newhart, Esq.'s Rate ($450/Hour).

A rate of $450 per hour for Mr. Newhart is not only reasonable but firmly grounded in his extensive experience and judicial precedent. Mr. Newhart, who has submitted an affidavit affirming his rate, has dedicated his entire legal career to consumer law since passing the Florida bar in 2015. Over nine years, he has litigated thousands of consumer protection cases and served as class counsel in significant consumer class actions. His admissions to the United States District Courts for the Southern and Middle Districts of Florida, as well as the Eleventh Circuit, underscore his broad expertise.

As the founder of Newhart Legal, P.A., and an active member of the National Association of Consumer Advocates (NACA), Mr. Newhart's specialization in consumer protection statutes is widely acknowledged. His expertise has led to invitations to speak at national seminars, including NACA's Spring Training on Spotting and Litigating TILA Claims, and to serve on panels for the Florida Bar's Consumer Protection Law Committee, where he discussed critical issues like unauthorized charges and junk fees.

In 2018, the Honorable Magistrate Judge Alicia O. Valle for the Southern District of Florida awarded Mr. Newhart $300 per hour. *Cabrera v. Haims Motors, Inc.*, No. 17-CV-60500, 2018 WL 2455438, at *3 (S.D. Fla. June 1, 2018). On July 11, 2021, the Honorable County Court Judge Chiaka Ihekwaba in Miami-Dade County determined that $400 per hour was a reasonable rate for his work. *Maria Diaz Pizzaro, et al. v. Matrix Auto Sales Inc.*, et al., 29 Fla. L. Weekly Supp. 340a.

The Court should use Mr. Newhart's current rate. When deciding hourly rate, courts use the

attorney's current rate rather than historic rate given the effects of inflation. *See Norman*, 836 F.2d at 1302 ("In this circuit, where there is a delay [in payment of attorneys' fees] the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rate"); *Carruthers v. Israel*, 274 F. Supp. 3d 1345, 1353 (S.D. Fla. 2017); *Duval*, 2010 WL 2771859, at \*2. Courts favor using an attorney's current rate rather than historical rates, especially considering inflation's impact (see *Norman*, 836 F.2d at 1302). Indeed, "simple principles of inflation require a readjustment" of previously established reasonable rates (*Soc. Life Network, Inc. v. Peak One Opportunity Fund, L.P.*, No. 21-21373-CV, 2023 WL 5053985, at \*6 (S.D. Fla. July 20, 2023)). Given the unprecedented inflation caused by the COVID-19 pandemic, the $400 rate set in 2021 would equate to $488.47 in today's dollars, as verified by the CPI Inflation Calculator maintained by the U.S. Bureau of Labor Statistics.

Therefore, adjusting for inflation and considering the substantial evidence of Mr. Newhart's qualifications and recognition, $450 per hour is not just reasonable—it is entirely justified.

### d.  Attorney Joshua Feygin, Esq.'s Rate ($400/Hour).

A rate of $400 per hour for Attorney Feygin is reasonable, given his extensive expertise and specialized practice. Since becoming a licensed Florida attorney in 2016, Mr. Feygin has been admitted to practice in the United States District Courts for the Southern, Middle, and Northern Districts of Florida, the United States District Court for the Eastern District of Michigan, and the Eleventh Circuit. His practice is almost exclusively focused on litigating consumer claims against motor vehicle dealerships, their sureties, and lenders, making him exceptionally knowledgeable and capable in the realm of consumer litigation.

Attorney Feygin's reputation in this niche area of law is well-established. He has been retained as special counsel for consumer compliance consulting and loss mitigation analysis by prominent dealerships across Florida, including South Motors Automotive Group, South Motor Company of

Dade County, Pompano Imports, Inc. (doing business as Vista Motor Company), and Midway Mall, Inc. (doing business as Midway Ford), among others. This role underscores the high regard in which his legal acumen is held within the industry.

Together with his legal practice, Attorney Feygin's expertise in consumer auto-fraud has attracted attention from the news media, where he has been called upon to provide expert analysis and insights. Specifically:

- Ron Hurtibsie, Auto-related fraud is rampant in Florida. Here's how to avoid getting taken,https://www.sun-sentinel.com/business/fl-bz-florida-third-worst-for-auto-scams-20210427-f57v2y37wfa7zhlx6rfe5pzcty-story.html, April 27, 2021.

- Ron Hurtibsie, How to avoid falling victim to South Florida's online car sales scams, https://www.sun-sentinel.com/business/money/fl-bz-car-scams-ss-prem-20210228-cpfbypxtija43epkte4ej4drmi-story.html, February 28, 2021.

His depth of experience, combined with his recognition as a thought leader in consumer protection law, fully justifies the $400 hourly rate.

### e. Attorney Sarah Cibula Feller, Esq.'s Rate ($250/Hour).

A rate of $250 per hour for Mrs. Feller is not only reasonable but fully supported by precedent and industry standards. Courts have consistently approved similar rates. In *Beishir v. Chase Home Fin. LLC*, $250 per hour was deemed reasonable for an associate (Case No. 8:07-CV-65-T-27MAP, at *5 (M.D. Fla. Feb. 26, 2008)). Likewise, in *Karow v. Day & Zimmerman NPS, Inc.*, the court set a reasonable associate rate at $270, further citing *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341 (S.D. Fla. 2007), which also supported this range (Case No. 14-24693-Civ-COOKE/TORRES, at *5 (S.D. Fla. Jun. 29, 2015); *James*, 489 F. Supp. 2d at 1351). Thus, the $250 rate for Mrs. Feller aligns with both industry averages and judicial determinations, making it reasonable.

Mrs. Feller has been a licensed Florida attorney since April 2021 and is admitted to practice in the United States District Courts for the Southern, Middle, and Northern Districts of Florida. She focuses almost exclusively on litigating consumer and personal injury claims. Since her admission to The Florida Bar, she has dedicated her practice to civil litigation, gaining significant experience and expertise in this field. Given her qualifications and the prevailing market rates, $250 per hour is a reasonable rate for her services.

## III.  Reasonable Number of Hours

Newhart Legal, P.A. and Joshua Feygin, PLLC seek $54,667.75 as reasonable attorney's fees, which includes a voluntary 15% reduction. The hours expended are broken down by attorney as follows:

| | | | |
|---|---|---|---|
| Mr. Newhart: | $450 | 72.7 hours | $32,715 |
| Mr. Feygin: | $400 | 33.5 hours | $13,400 |
| Mrs. Feller: | $250 | 72.8 hours | $18,200 |

### a.  Reasonable Hours Standard

Attorneys must exercise "billing judgment" when determining reasonable hours. *Hensley*, 461 U.S. at 434. This requires them to exclude any "excessive, redundant, or otherwise unnecessary hours" from their fee applications. *Norman*, 836 F.2d at 1301. Simply put, hours that would be unreasonable to bill to a client are equally unreasonable to bill to the opposing party, regardless of the attorney's skill, reputation, or experience. If attorneys fail to make these exclusions, "courts are obligated to do it for them." *American Civil Liberties Union of Georgia*, 168 F.3d at 428. To determine the reasonable number of hours, the fee applicant must present specific and detailed evidence. *Id.* at 427, 432–33.

### b.  The *Johnson* factors support the attorney's fees and hourly rates requested.

The *Johnson* factors, which inform the calculation of the lodestar in the Eleventh Circuit, also weigh in favor of the requested fee award in this case. See *Johnson*, 488 F.2d at 717–19 (setting forth a

subjective method of determining reasonable fees based on 12 factors); see also *Norman*, 836 F.2d at 1299 (recognizing that the Johnson factors may "be considered in terms of their influence on the lodestar amount" (citation omitted)). The factors include:

> (1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the litigation; (5) the customary fee for similar work; (6) the attorneys' expectations at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) fee awards in similar cases.

*Johnson*, 488 F.2d at 717–19.

As explained above and below, the *Johnson* factors support the request for attorneys' fees.[2]

### 1. Time and labor expended, and novelty and difficulty of the questions raised.

Mr. Roberto filed suit against Addison and JRK nearly a year ago, on August 16, 2023. The docket entries reflect the significant time and effort invested to drive this case toward a successful resolution against Addison and JRK.

The litigation required addressing different legal arguments, defenses, and counterclaims, particularly with regard to breach of contract and FCCPA violations. This complexity demanded more time in preparing responses, conducting discovery, and filing motions, and parsing through extensive evidence—including maintenance records, financial transactions, and communications—added significant layers of difficulty. The docket also shows significant procedural challenges, including defaults and motions to set aside defaults. For example, there were motions for default judgments against both Addison and JRK, which were eventually set aside, requiring further litigation steps.

Addison and JRK repeatedly refused to provide critical discovery, leading to several discovery

---

[2] Factors three, five, and nine are discussed above in each attorney's reasonable hourly rate.

motions and hearings. The docket reflects a series of motions to compel better responses, objections, and multiple hearings aimed at resolving these disputes. Plaintiff's counsel had to invest substantial time preparing for these hearings to secure the necessary discovery. These obstacles, created by their refusal to cooperate, forced counsel to engage in extensive motion practice to protect Plaintiff's rights and obtain vital information.

Addison and JRK unilaterally canceled their mutually scheduled deposition just the night before, after allowing Plaintiff's counsel to spend much time preparing for the depositions of two entities. Rather than providing timely notice, they deliberately waited until the last minute to cancel, wasting valuable time and resources. This tactic was not only unprofessional but obstructed the discovery process, further hindering the efficient prosecution of this claim.

Because Addison and JRK adopted a scorched earth strategy that unnecessarily drove up Plaintiff's litigation fees and costs, they should fully expect to bear the burden of the attorney fees it forced Plaintiff to incur. *Thiebes v. Wal-Mart Stores, Inc.*, 220 F. App'x 750, 751 (9th Cir. 2007); see *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661 (E.D. La. 1976) ("Those who elect a militant defense in the face of a statute allowing attorney's fees if they are defeated must take into account the time and effort they exact from their opponents.")

### 2. Opportunity costs, the undesirability of the case, attorneys' expectations at the outset of litigation, and time limitations imposed by the client or circumstances.

Unlike larger firms with extensive resources and support staff, small firms like Joshua Feygin PLLC and Newhart Legal, P.A. operate with limited personnel and resources. In these firms, attorneys must personally oversee every aspect of a case—from initial client meetings to court appearances. The attorneys managing Mr. Roberto's case needed to devote much time and effort to every detail, which directly impacted their ability to handle other cases. The extensive work on Mr. Roberto's case against JRK and Addison came at the expense of other matters, limiting the firms' capacity to take on new

clients or attend to existing ones. This opportunity cost is particularly steep for small firms, where the financial health of the practice hinges on a steady flow of cases, directly affecting revenue and growth.

"While [defendant] has every right to vigorously contest [plaintiff's] claim, it cannot later argue that the fees should be reduced simply because the case could have been litigated with fewer resources and less time." *Henson v. Columbus Bank & Tr. Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985); *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981) ("Although defendants are not required to yield an inch or pay a dime not due, they may be required to bear the cost of the increased efforts their militant resistance demands if they are unsuccessful."). Addison and JRK repeatedly had the chance to resolve this matter, including during court-mandated mediation, yet chose to aggressively defend the case. Their decision to engage in extensive litigation tactics, rather than seeking a reasonable settlement, directly led to the significant increase in attorneys' fees and costs incurred by Mr. Roberto's legal team. By rejecting multiple opportunities to settle and forcing the case to proceed, Addison and JRK bear responsibility for the escalation in legal expenses.

Their defense strategy included filing several motions, raising objections during discovery, and even seeking protective orders to avoid depositions. Each of these actions required Mr. Roberto's attorneys to respond diligently, investing substantial time and effort to ensure their client's rights were protected. This vigorous defense approach not only prolonged the litigation but also escalated the costs associated with managing the case.

Even now, Addison and JRK continue to act unreasonably in addressing attorney's fees and costs. Plaintiff's counsel, in a good-faith effort to avoid unnecessary litigation, offered a generous 25% reduction. Yet, Addison and JRK rejected this offer, insisting on an unreasonable 50% reduction, further dragging out the process and forcing this motion. Their refusal to negotiate in good faith has not only prolonged the litigation but also forced Plaintiff to incur more expenses. Rewarding these tactics with any reduction now would send the wrong message.

16

This case against Addison and JRK was also prosecuted on a contingency basis, placing the entire financial burden of litigation on Mr. Roberto's attorneys from the start. This makes the case undesirable, requiring Newhart Legal, P.A. and Joshua Feygin, PLLC, to fund all costs and dedicate extensive time and effort without any guarantee of compensation. This arrangement highlights the significant risk these attorneys undertook. As the court noted in *Noyes v. Kelly Services, Inc.*, a contingent fee must be higher than a fee paid as services are performed because it compensates the lawyer not only for the work done but also for the risk of nonpayment (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132–33, 17 P.3d 735 (2001)). Had Mr. Roberto not prevailed, the substantial time, effort, and expenses invested in this complex case would have gone entirely unrecovered.

### 3. Amount in controversy and results obtained.

The financial and reputational stakes for Mr. Roberto and his attorneys were significant for several reasons. Contesting the unjust $1,391 charge wasn't merely about addressing an immediate financial burden; it was a critical stand for his financial stability. Losing this case could have left Mr. Roberto liable for Addison and JRK's attorney's fees and costs, potentially leading to financial ruin. Such a loss would have also damaged his reputation. Moreover, the ongoing stress and anxiety from this legal battle threatened his personal well-being, underscoring the high stakes involved.

The outcome for Mr. Roberto was highly favorable. He recovered the full statutory and actual damages, totaling $10,000. This victory did more than provide direct relief—it set an important precedent, reinforcing that landlords and property managers like Addison and JRK cannot evade accountability for unfair practices. The successful challenge not only served justice for Mr. Roberto but also sent a strong message to deter Addison, JRK, and similar entities from engaging in such deceptive practices. Mr. Roberto is entitled to fees for time spent litigating fees.

### c. Mr. Roberto is entitled to fees on fees.

In the Eleventh Circuit, an award of fees is appropriate for the time expended in pursuing a motion for an award of attorney fees. See *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309–10 (11th Cir. 2001) ("A prevailing party is entitled to reasonable compensation for litigating a [fee] award."); *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979) ("We conclude that attorney's fees may be awarded for time spent litigating the fee claim.") The total hours sought above include time spent litigating the amount of fees.

Addison and JRK will likely argue that fees on fees are not recoverable, citing *Chavez v. Mercantil Commercebank, N.A.*, No. 10-23244-CIV, 2015 WL 136388, at *5 (S.D. Fla. Jan. 9, 2015), a breach of contract case, and Schwarz v. Seeman Holtz Prop. & Cas., LLC, *Schwarz v. Seeman Holtz Prop. & Cas., LLC*, No. 21-CV-81005, 2023 WL 2087934, at *8 (S.D. Fla. Feb. 2, 2023), another breach of contract case, to support their position. Yet these cases, and particularly their reliance on *McMahan v. Toto*, 311 F.3d 1077, 1085 (11th Cir. 2002), supports an award of fees on fees in this context.

All three cases arise from *State Farm Fire & Cas. Co. v. Palma*. In *Palma*, the Florida Supreme Court held that the insurance statute in question did not justify awarding fees for litigating the amount of fees. *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993). The Court reasoned that the statute's purpose was to "discourage" insurers from denying valid claims and to reimburse attorney's fees when insureds were forced to defend or sue to enforce their rights. *State Farm Fire & Cas. Co.*, 629 So. 2d at 833 (quoting *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992)).

In *Chavez*, the Eleventh Circuit reviewed *Palma* and concluded that fees on fees are recoverable when the primary purpose of the fee-shifting statute is to encourage the representation of certain individuals. *Chavez*, 2015 WL 136388, at *5. According to *Chavez* and *McMahan*, *Palma* precludes the recovery of fees on fees unless the statute's purpose supports such an award. Following this logic, the bankruptcy court in *In re Burdett*, No. 8:09-AP-00390-KRM, 2015 WL 150848, at *4 (Bankr. M.D. Fla. Jan. 12, 2015), determined that the FCCPA does indeed justify an award of fees on fees in this context.

Before *Burdett*, "No Florida court had directly addressed whether *Palma* applied to FCCPA cases." *In re Burdett*, 2015 WL 150848. In *Burdett*, the court emphasized that the FCCPA is designed to protect Florida consumers from unlawful practices by creditors and debt collectors, making it a "mandatory fee-shifting provision" aimed at encouraging private attorneys to bring FCCPA claims. *In re Burdett*, 2015 WL 150848, at *4 (citing *Brook v. Chase Bank USA, N.A.*, 566 F. App'x 787 (11th Cir. 2014)). The court further recognized that denying compensation for litigating a fee claim would effectively diminish the attorney's overall rate for prosecuting the statutory claim, potentially undermining the value of their work and discouraging vigorous representation. *In re Burdett*, 2015 WL 150848, at *5. If attorneys are forced to absorb the cost of litigating fee awards in FCCPA cases, they will likely be deterred from representing clients with valid FCCPA claims—an outcome that directly contradicts the FCCPA's purpose of protecting consumers. Thus, the court allowed the recovery of fees on fees, reasoning that "FDCPA cases allowing fees-on-fees establish a plausible rationale that applies here, as it furthers the FCCPA's goal of shielding Florida consumers from proscribed practices by debt collectors." *In re Burdett*, 2015 WL 150848 (citing *Bauer v. Midland Credit Mgmt., Inc.*, No. 8:12-CV-614-T-23TGW, 2012 WL 6733649 (M.D. Fla. Dec. 4, 2012); *Bianchi v. Bronson & Migliaccio, LLP*, No. 09-61164-CIV, 2011 WL 379115 (S.D. Fla. Feb. 2, 2011); and *Small v. Absolute Collection Serv., Inc.*, No. 4-61196-CIV, 2006 WL 6183287 (S.D. Fla. Mar. 23, 2006)).

As established in *Burdett*, the FCCPA is a mandatory fee-shifting statute specifically designed to protect consumers and incentivize attorneys to pursue FCCPA claims. Denying fees on fees would contradict this objective, discouraging attorneys from representing clients with valid claims. Awarding fees therefore on fees aligns with the FCCPA's core purpose of safeguarding Florida consumers from abusive debt collection practices.

### d. Voluntary Reduction.

Mr. Roberto's attorneys diligently sought to settle this matter with Addison and JRK, ensuring their billing was both accurate and necessary, while fully aware of their obligation to exercise billing judgment and avoid any excessive, duplicative, or unnecessary hours. In good faith, Attorney Newhart voluntarily maintained his $400 hourly rate for work performed before his rate increased to $450, and Newhart Legal, along with Joshua Feygin, PLLC, agreed to an additional 10% overall reduction. Despite these concessions, Addison and JRK stubbornly insisted on a drastic 50% reduction, refusing to offer any reasonable compromise.

Newhart Legal, P.A. and Joshua Feygin, PLLC seek a total of $54,667.75, which includes a 15% reduction ($9,647.25) from the overall amount that was incurred.

### e. Expenses Not Taxable under 28 U.S.C. § 1920.

In addition to the amounts delineated above, Mr. Roberto's attorneys seek the recovery of the their expert witness' fees in the amount of $2,700. *See* Exhibit D.

Under the Federal Rules, prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the court or statute. *See* Fed. R. Civ. P. 54(d)(1). Rule 54(d) creates a presumption in favor of awarding costs to the prevailing party. See, e.g., *Guillaume v. NY Bagel Boy, Inc.*, 2015 WL 13776788 at *4 (S.D. Fla. 2015) citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991).

The Eleventh Circuit Court of Appeals considered whether expenses that are necessary for the prosecution of a fee-shifting case not specifically delineated by 28 U.S.C. § 1920 could be properly taxed against a losing Defendant in *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014). The Eleventh Circuit recognized that the following analysis should control whether these types of expenses should be taxed against the losing party based upon a statutory prevailing party attorneys' fee provision:

> We therefore hold that reasonable litigation expenses such as mediation, legal research, postage, and travel may be recovered under § 1132(g)(1) if it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses. *See Jenkins*, 491 U.S. at 285–87 & n. 9, 109 S.Ct. 2463. Because the district court did not consider the prevailing practice in the local community or the reasonableness of *Evans'* expenses, we remand on this issue.

*Evans*, 762 F.3d at 1299.

It is Mr. Roberto's attorneys' practice, to routinely bill (and shift the burden of paying to) fee paying clients for such things as expert witness fees. The undersigned's practice of passing these costs on to fee-paying clients is in accordance with the practice in the community for passing through or passing along such costs to fee-paying clients. Consequently, items such as expert witness fees, "may be awarded as attorneys' fees if the district court determines they were reasonably incurred in the course of case preparation, settlement, or litigation." *Evans*, supra. Here, there can be no dispute that the expert witness fees borne by Mr. Robertos' attorneys were necessarily incurred in the course of litigation given the scorched earth approach employed by Addison and JRK. As a result, this Honorable Court should exercise its discretion and award Mr. Roberto's expert witness fees in the amount of $2,700.00

## CONCLUSION

**WHEREFORE**, Mr. Roberto asks the Court to enter a judgment for attorney's fees in the amount of $54,667.75, as detailed in this petition, $2,700.00 as and for expert witness fee costs, and any further relief the Court deems appropriate.

## <u>CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE</u>

Pursuant to Local Rule 3.01(g), Attorney Newhart conferred with opposing counsel in a good faith effort to resolve the issues raised by the motion but could not agree to the relief sought as it relates to the aforementioned deficiencies.

## <u>VERIFICATION</u>

In accordance with 28 U.S.C. 1746, the undersigned certifies under penalty of perjury that

the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certify that they verily believe the same to be true.

Respectfully submitted September 13, 2024, by:

*Darren R. Newhart, Esq.*
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd. Suite 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile:  (561) 473-2946

/s/ Joshua E. Feygin
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email:  Josh@Sueyourdealer.com
SUE YOUR DEALER – A LAW FIRM
1930 Harrison St, Suite 208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 13, 2024, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Florida, using the CM/ECF system, and that the foregoing document was served electronically to all counsel of record.

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685