UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61579-CIV-DIMITROULEAS

CARLOS ROBERTO,

    Plaintiff,

vs.

ADDISON PLACE APARTMENTS PROPERTY
OWNER LLC, et al.,

    Defendants.
_____/

**OMNIBUS ORDER**

THIS CAUSE is before the Court on Defendant's I.Q. Data International Inc. ("I.Q. Data" or "Defendant")'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction Based on the Supreme Court's *Ramirez* Decision; Motion for Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority ("Defendant's Motion to Dismiss") [DE 122], filed July 25, 2024, and Plaintiff Carlos Roberto ("Plaintiff")'s Motion for Partial Summary Judgment ("Plaintiff's Motion for Partial Summary Judgment") [DE 125], filed on July 26, 2024. The Court has carefully considered the Motions [DE's 122, 125], the Responses [DE's 129, 133], and the Replies [DE's 142, 147], the Statements of Fact [DE's 123, 127, 134, 137, 143, 148], and is otherwise fully advised in the premises.

**I.**    **BACKGROUND**

Plaintiff brought this action against Defendants Addison Place Apartments Property Owner LLC ("Addison"), JRK Residential Group, Inc. ("JRK"), and I.Q. Data, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et seq.* against Defendants Addison and JRK, and violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, *et seq.* against Defendant I.Q. Data. *See* [DE 1].

According to the Complaint: On November 1, 2019, Plaintiff signed a residential lease with Defendants Addison Place Apartments and JRK Residential. Upon moving into the apartment, Plaintiff found numerous defects and damages. The defects and damages were not fixed or repaired. In late 2022, Plaintiff notified Addison and JRK that he would not renew the lease. On February 6, 2023, Plaintiff timely vacated the apartment. Addison and JRK, however, did not return Plaintiff's $500 security deposit. In addition, Addison and JRK assessed $1,391 in charges against Plaintiff. Plaintiff contends that Addison and JRK had no right to retain the security deposit or assess the charges against him.

Addison and JRK hired Defendant I.Q. Data, a debt collector, to collect the $1,391 debt owed by Plaintiff. I.Q. Data telephoned Plaintiff in an attempt to collect the debt. I.Q. Data also reported the debt to credit reporting agencies.

Based on the above allegations, on August 16, 2023, Plaintiff filed the instant action alleging two claims for violation of the FCCPA against Addison and JRK (Counts I and II) and two claims for violation of the FDCPA against I.Q. Data (Counts III and IV). The claims against Defendant I.Q. Data are based on I.Q. Data's attempts to collect on an allegedly invalid or illegitimate $1,391 debt owed by Plaintiff to Defendants Addison and JRK. Specifically, Plaintiff claims that I.Q. Data's debt collection activity constituted a false representation regarding the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A), and that I.Q. Data's conduct constitutes an unfair or unconscionable means to collect a debt and constitutes an attempt to collect a debt not permitted by law or agreement, in violation of § 1692f(1). *See generally* [DE 1]. Plaintiff alleges that these actions by I.Q. Data have "caused [his] credit score

2

to plummet, and caused him emotional distress, humiliation, mental anguish, embarrassment, damage to his reputation, and pain and suffering." *See id.* at ¶¶ 62, 68.

Shortly after filing its Answer and Affirmative Defenses, Defendant I.Q. Data filed a Motion for Summary Judgment on Plaintiff's FDCPA claims, arguing that that it is entitled to judgment in its favor because a debt collector has no pre-collection duty to investigate the validity of a debt and I.Q. Data is entitled to rely upon the information that it received from Addison and JRK. *See* [DE 20]. On January 16, 2024, the Court entered an Order denying I.Q. Data's Motion for Summary Judgment, rejecting I.Q. Data's argument that it has a right to rely on the presumption that the debt referred to it is valid. *See* [DE 67] at pp. 4–6.

Following the close of discovery, on July 25, 2024, Defendant I.Q. Data filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. *See* [DE 122]. Therein, I.Q. Data accuses Plaintiff and his counsel of fraudulently attempting to fabricate damages to create standing and requests that the Court dismiss this case for lack of subject matter jurisdiction. *See id.* For the same reason, I.Q. Data also requests that the Court impose sanctions against Plaintiff. *See id.* On July 26, 2024, Plaintiff filed a Motion for Partial Summary Judgment, seeking judgment in his favor on liability for his two FDCPA claims against I.Q. Data and on I.Q. Data's affirmative defenses. *See* [DE 125]. Both Motions are now ripe for review.

Because a challenge to standing is a threshold challenge to the subject matter jurisdiction of the Court, the Court first considers I.Q. Data's Motion to Dismiss for Lack of Subject Matter Jurisdiction. *See Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 804 (11th Cir. 1993); *Gardner v. Mutz*, 962 F.3d 1329, 1338–39 (11th Cir. 2020) ("[B]ecause standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before

3

proceeding to consider the merits of her claim, no matter how weighty or interesting.") (citation omitted).

## II.     I.Q. DATA'S MOTION TO DISMISS AND MOTION FOR SANCTIONS

### A. Standards Governing Standing

"[F]ederal courts cannot exercise jurisdiction over cases where the parties lack standing." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011). This principle exists because there is "a constitutional limitation of federal-court jurisdiction to actual cases or controversies" and "[o]ne element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 133 S.Ct. 1138, 1146 (2013) (internal citations and quotations omitted). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Fla. Wildlife Fed'n, Inc.*, 647 F.3d at 1302 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

The party invoking federal jurisdiction bears the burden of proving standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* At the motion to dismiss stage, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing. *Id.* At the summary judgment stage, however, the

4

plaintiff must "'set forth' by affidavit or other evidence 'specific facts,' ... which for purposes of summary judgment motion will be taken to be true." *Id.*

### B. Standards Governing a Rule 12(b)(1) Dismissal

When a defendant challenges standing on a Motion to Dismiss, the motion attacks the jurisdiction of the Court and is governed by Rule 12(b)(1). Rule 12(b)(1) of the Federal Rules of Civil Procedure indicates that attacks on this Court's subject matter jurisdiction may be either facial or factual. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint. *Id.* at 1529. When courts review facial attacks on their subject matter jurisdiction, they must take the allegations of the complaint at face value and ascertain whether they adequately allege subject matter jurisdiction. *Id.* at 1529. Factual attacks challenge subject matter jurisdiction as a matter of fact. *Id.* When adjudicating factual attacks on its subject matter jurisdiction, the Court may look at materials from outside the four corners of the complaint insofar as they relate to jurisdictional questions. *Id.* In a factual review, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action. *Id.* If the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action, then:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the

existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).

Conversely, if an attack on subject matter jurisdiction also implicates an element of the cause of action, then:

> [T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion....

*Williamson v. Tucker,* 645 F.2d 404, 415–16 (5th Cir. 1981), *cert. denied,* 454 U.S. 897 (1981).[1] "When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Lawrence*, 919 F.2d at 1530. That standard does not permit the Court to weigh conflicting evidence or make credibility determinations. *See Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016).

### C. I.Q. Data's Motion to Dismiss

In its Motion, Defendant I.Q. Data has lodged a factual attack on Plaintiff's standing.[2] Specifically, I.Q. Data argues that Plaintiff lacks standing to pursue the claims asserted in the Complaint because (1) Plaintiff cannot use the alleged denial of a mortgage by mortgage lender

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[2] IQ Data states that it "bring a facial attack on subject matter jurisdiction," while simultaneously arguing that "the Court can consider deposition testimony and affidavits." *See* [DE 122] at p. 9. The Court agrees with Plaintiff that IQ Data brings a factual attack on subject matter jurisdiction.

Guaranteed Rate Inc. ("Guaranteed Rate") as an injury-in-fact because he never intended to obtain, nor would he have been able to obtain, such a loan; (2) Plaintiff, not I.Q. Data, was the cause of Plaintiff's plummeting credit score; (3) I.Q. Data accurately reported the debt as "disputed," and therefore could not have caused Plaintiff's injury; (4) Plaintiff admitted that he did not know if I.Q. Data's reporting of the debt caused the denial of his credit increase; and (5) Plaintiff stated that Addison and JRK, not I.Q. Data, claims he owes the debt. The Court finds I.Q. Data's arguments unavailing as those arguments implicate the merits of Plaintiff's claims, and factual disputes exist as to each of I.Q. Data's contentions.

First, I.Q. Data argues that Plaintiff cannot use Guaranteed Rate's denial of a mortgage as a basis for injury-in-fact because Plaintiff never intended to obtain a loan. To support this fact, I.Q. Data cites the deposition testimony of Maria Theros, a loan officer with Guaranteed Rate. In her deposition, Ms. Theros testified, *inter alia*, that she felt like Plaintiff "used" her for this lawsuit. *See* [DE 123-7] ("Theros Dep."), 39:9-18. However, nothing in this testimony—or any of Ms. Theros' other cited testimony—establishes that Plaintiff never intended to obtain a loan. *See Harrison v. State Farm Fire & Cas. Co.*, No. 212CV205FTM38UAM, 2013 WL 12158377, at *5 (M.D. Fla. Dec. 11, 2013) ("A witness may testify to his/her actions or inactions but not the state of mind of another person."). At best, it establishes what Ms. Theros *thought* about Plaintiff's motives for seeking her assistance. Indeed, Ms. Theros admitted "[w]hat she thinks might not be the truth." Theros Dep., 93:8–9. Even if Ms. Theros' testimony were sufficient, Plaintiff has presented sufficient evidence to create a factual dispute as to whether Plaintiff ever intended to obtain a loan to buy a home. *See* [DE 137] at ¶¶ 63–64.

I.Q. Data's argument that Plaintiff never would have obtained such a loan because he did not have any money for a down payment is also unavailing. Plaintiff has produced evidence

7

showing that Plaintiff and his wife would have qualified for down payment assistance had Plaintiff's credit score been above 640, which Plaintiff's expert estimates Plaintiff would have been the case if not for I.Q. Data's actions. *See* [DE 137] at ¶¶ 49–53, 60 69. While I.Q. Data has produced evidence to the contrary, a disputed question of fact exists as to whether Plaintiff would have obtained a loan to buy a home.

Second, while both parties have submitted evidence demonstrating that Plaintiff's credit was not perfect, disputed questions of fact exist as to whether I.Q. Data's actions were a substantial factor in bringing down Plaintiff's credit score. *Compare* [DE 123] at ¶¶ 39–41 *with* [DE 137] at ¶¶ 39–41.

Third, I.Q. Data argues that because it accurately reported the debt as "disputed," it could not have caused Plaintiff's injury. I.Q. Data argues that because Plaintiff claims the debt was not owed, and Defendants Addison and JRK claim that the debt was owed, the debt was accurately reported as disputed. But Plaintiff has presented sufficient evidence to create a factual dispute that the reporting of a debt as disputed—if it in fact was not owed at all—nonetheless had the effect of harming Mr. Roberto's credit. *See* [DE 130-1].

Fourth, I.Q. Data argues that Plaintiff lacks standing because Plaintiff himself did not know whether I.Q. Data's reporting caused his credit to plummet. To support this fact, I.Q. Data points to deposition testimony in which Plaintiff is asked whether he was rejected by any creditors after the I.Q. Data had reported the debt to the credit reporting agencies. Plaintiff responds that he had tried to increase his Bank of America credit card limit and was denied but that did not know whether this denial was related to I.Q. Data's reporting on the debt in question. But whether a Plaintiff states an injury for standing does not turn on whether Plaintiff *knows* of the injury, but

whether there is an injury *in fact*. Plaintiff accordingly has presented sufficient data to create a factual dispute that I.Q. Data's reporting lowered Mr. Roberto's credit score.

Fifth, I.Q. Data argues that Addison and JRK, not I.Q. Data, claims he owes the debt, and that I.Q. Data was merely contracted to collect that debt. Accordingly, the injury is not tracible to I.Q. Data. This argument is unavailing. The law recognizes a separate liability as to deceptive practices of debt collectors. The Fair Debt Collection Practices Act makes *debt collectors* liable where a debt collector engages in an act prohibited by the FDCPA directed toward a consumer plaintiff. It matters not that the debt collector is not itself the original creditor. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–1361 (S.D. Fla. 2000) (plaintiff may prevail on an FDCPA claim where, "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."). Here, Plaintiff has provided sufficient evidence to create a genuine dispute that I.Q. Data placed the collection calls during which its employees demanded Mr. Roberto pay a debt that it did not owe. *See* [DE 127] Plaintiff further provides evidence to create a genuine dispute of fact that I.Q. Data provided false information to the credit agencies to try to get Mr. Roberto to pay the debt. Accordingly, the injury is fairly traceable to I.Q. Data.

### III.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A. Standards Governing Motions for Summary Judgment

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the

9

absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

B. Discussion

In its Motion, Plaintiff asks the Court to grant partial summary judgment in his favor on liability as to Count III, which brings claims against I.Q. Data under the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2)(A), and Count IV, which brings claims against I.Q. Data under the FDCPA 15 U.S.C. §§ 1692f, 1692f (1). Mr. Roberto also moves for this Court to grant summary judgment on of I.Q. Data's affirmative defenses number two, four, five, six, seven, eight, nine, ten, and eleven.

      a. **Count III**

In its Motion for Partial Summary Judgment, Plaintiff argues that I.Q. Data violated § 1692e in three collection calls. Plaintiff argues that (1) I.Q. Data's collection calls falsely represented that Mr. Roberto owed $1,391 when in fact he owed nothing, (2) I.Q. Data made false statements to the credit agencies by reporting that Mr. Roberto owed a debt that he did not, (3) I.Q. Data's collection agent, Ashley Foster, made false and deceptive statements when she a) stated that Addison applied the security deposit to the charges for damages and that Mr. Roberto owed the remaining balance, b) stated that Mr. Roberto's failure to perform a move-out inspection nullified his right to dispute the charges, and c) stated, "[y]ou're going to be paying more in legal fees if you take them to court on this. You're now in collection." Therefore, Plaintiff contends, the debt collection calls amount to a false representation that violates the FDCPA.

To prevail on an FDCPA claim, plaintiffs must demonstrate that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–1361 (S.D. Fla. 2000) (citations omitted). The FDCPA is a strict liability statute that "typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270–71 (11th Cir. 2011) (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 (11th Cir. 2010)). In Count III, Plaintiff alleges that I.Q. Data engaged in a prohibited activity under § 1692e and 1692e(2)(A), which states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . The false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C.

§ 1692e(2)(A). Where a debt collector attempts to collect a debt that is not owed, such an attempt constitutes a 'false representation' as to the character or status of the debt in violation of 1692e. *See Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (collecting cases).

There is no dispute that prongs (1) and (2) are met: Plaintiff was the object of a debt collection activity that arose from a consumer debt, and defendant is a debt collector as defined by the FDCPA. The issue is as to prong (3): whether I.Q. Data engaged in an activity prohibited by the FDCPA, specifically, whether it falsely represented the character, amount, or legal status of a debt. 15 U.S.C. § 1692e(2)(A).

In the first instance, Defendant argues that it had the right to rely on representations from its client—Addison and JRK—as to the nature and the amount of the debt. Defendant asserts that regardless of whether the debt was in fact owed, I.Q. Data could rely on representations from its client that it was properly owed. That argument has already been rejected in this case. *See* [DE 67] ("Upon careful review, the court agrees with the [] authority. . . finding that a debt collector may not shield itself from liability by merely relying on a creditor's representation that a debt is owed."). Accordingly, because I.Q. Data would be liable if it attempted to collect a debt that the consumer did not owe, we must determine whether there is a genuine dispute of material fact as to whether Plaintiff owed the debt.

Plaintiff argues that I.Q. Data improperly attempted to collect a $1,391.00 debt that Mr. Roberto did not owe in phone calls on April 7, 2023, April 19, 2023, and June 9, 2023, and further that it improperly reported the debt to the Credit Reporting Agencies in violation of the FDCPA. The collection was for the invoice that Addison and JRK charged Mr. Roberto for carpet

replacement in the amount of $1,265.00, partial paint in the amount of $150.00, and cleaning fee in the amount of $90.00. *See* [DE 127-13]. We address whether Plaintiff owed each in turn.

### i. $1,265.00 Carpet Charge

An Addendum to the Lease titled "Move Out Cleaning & Replacement Charges" states that the resident, upon moving out, is responsible for "painting the walls with one coat (other than damage or heavy smoke)" and "shampooing of the carpets (other than stains, heavy soil, and pet damage)." [DE 127-12]. The Addendum states that "[r]esident is required to have the apartment professionally cleaned and carpet cleaned upon move out. If the apartment is not returned to us in this condition the following charges will be applied." *Id.* The Addendum then contains a chart, which states, as to carpet cleaning costs, "One Bedroom: $80; Two Bedroom: $90.00; Three Bedroom: $110.00; Three Bedroom Townhome: $175.00." *id.* If a full "carpet replacement" was required, the Addendum states that the tenant would be charged the "actual cost." Pursuant to this contract term, Addison charged Plaintiff a $1,265.00 fee to replace the carpet upon move out. *See* [DE 127-13].

Plaintiff argues that, despite the contractual language, Plaintiff does not owe the "actual cost" of the carpet replacement because (1) the carpet was moldy when Mr. Roberto moved in during November 2019. [DE 127] ¶¶ 2–10, 15–24; (2) the carpet sustained damage when the water heater flooded the apartment, around mid-2020. [DE 127] ¶¶ 12, 36–49; (3) Mr. Roberto was not charged for the actual cost of the replacement of the carpet but instead for a full reconstruction of the flooring involving adding new wooden planks; and (4) Mr. Roberto placed work orders from November 2020 through December of 2022 in attempt to address the problem. [DE 127] ¶¶ 36–49.

13

- Work Order 6871491 dated November 17, 2020. ("After the water heater explode a couple of month ago... the master room and master closet carpet have a very bad odor that not go away... cleaned with machine and also use a lot of odor spray and still").

- Work Order 6937278 dated January 9, 2021 ("We have water on the floor, carpet, closet and throght [sic] the wall and is know in my pantry, kitchen.").

- Work Order 7436528 dated July 15, 2022 ("The carper had mold .. after the water heather explotion [sic] and the apartment was full of water .. they supposed to change it and we are still waiting.").

- Work Order 7444216 dated July 28, 2022, ("The carpet are full of mold …!! They are black !! We request since we move in (3 yrs ago) to change them… They are very bad with mold and this make us sick every month.").

- Work Order 7255704 dated August 15, 2022 ("Tha [sic] carpet have morld [sic] since the water heather [sic] explosion. Two yrs ago … thwy [sic] told us they qill [sic] change it .. we still waiting..").

- Work Order 7523715 dated December 26, 2022 ("Since we made a contract (2019) they promised us to change the carpets and they never did. Then the water heater exploded and the carpets were flooded and they are full of mold, they are stained and full of fungus. They need to be changed.")

[DE 127-7].

In response, I.Q. Data points to JRK'S Response to Deposition by Written Questions, which contains a list of work orders made by Plaintiff, each one with an indicator that that the work was completed, and the status of the order was closed. [DE 134] ¶ 49.

*ii. $50.00 Paint Fee and $90.00 Cleaning Fee*

The Lease Agreement states that a tenant is required to thoroughly clean the apartment and apply a coat of paint prior to vacating the apartment. *See* [DE 127-12]. The Lease states that tenant will be subject to cleaning fees in the event that the cleaning is inadequate. *Id.* Plaintiff has alleged that Plaintiff cleaned the apartment upon moving out. [DE 127] ¶¶ 52. Further, Plaintiff has produced evidence that he painted the wall one coat of paint upon move out as required under the lease agreement. [DE 127] ¶¶ 53–54. Accordingly, Plaintiff argues that he was improperly charged the paint and cleaning fee.

iii. *Discussion*

I.Q. Data contends that the total debt of $1,391 was "clearly authorized by the lease agreement." [DE 133] at p. 11. A grant of summary judgment is only appropriate when there is both no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Here it is not at all clear that Plaintiff is entitled to judgment as a matter of law. While the lease agreement expressly authorized this charge, the charge may not have been appropriate in light of the preceding two years in which Plaintiff repeatedly complained about issues with the carpet and the sanitation of the unit. There is furthermore conflicting evidence as to whether the issues were ever addressed. *Compare* [DE 127-7] *with* [DE 134] ¶ 49. Accordingly, Plaintiff's Motion for Summary Judgment as to Count III is hereby **DENIED**.

b. **COUNT IV**

In Count IV, Plaintiff further argues that I.Q. Data engaged in a prohibited activity under § 1692f. Plaintiff argues that I.Q. Data's attempt to collect the debt constituted an unfair practice because Plaintiff did not in fact owe the debt. Moreover, I.Q. Data's reporting of the debt to the credit reporting agencies constitutes an unfair practice for the same reason.

15

Section 1692f states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount. . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f. Because based on the facts presented, there remains a genuine dispute of whether the debt ($1,391) was expressly authorized by law, *see supra,* Plaintiff Motion for Summary Judgment as to Count IV is hereby **DENIED**.

### c. Affirmative Defenses Seven, Eight, Ten, and Eleven

Defendant agrees that affirmative defenses seven, eight, ten, and eleven, should be stricken. Accordingly, Plaintiff's Motion for Summary Judgment as to Affirmative Defenses seven, eight, ten, and eleven is hereby **GRANTED**.

### d. Affirmative Defense Nine

Plaintiff moves for summary judgment on Affirmative Defense Nine, which states that Defendant had the "right to reasonably rely on information from the creditor" and that Defendant "acted consistently with the case of *Cornette v. I.C. System Inc.*, 280 F.Supp.3d 1362 (S.D. Fla. 2017). The Court in this case has already declined to adopt the reasoning in *Cornette*. See [DE 67]. Defendant now argues that the Eleventh Circuit in *Stanley v. Kansas Counselors of Kansas City*, 639 Fed. Appx. 589 (11th Cir. 2016) has adopted the reasoning in *Cornette* (though *Stanley* predates *Cornette*), and that this Court is bound to follow *Stanley*. The Court disagrees.

First, *Stanley* does not even discuss the right to rely defense. Instead, it discusses the bona fide error defense, but expressly states that "*the district court [] erred* in granting summary judgment based on bona fide error" because "Kansas Counselors did not argue the bona fide error defense in its motion, and the district court did not provide Stanley with notice of or an opportunity

16

to respond to that basis for summary judgment." *Stanley*, 639 F. App'x at 591. (emphasis added). Instead, the Eleventh Circuit affirmed a grant of summary judgment to defendants on the grounds that plaintiff in fact owed the debt. *Stanley* does not, as defense repeatedly insists, adopt a right to rely defense to the FDCPA. Accordingly, Plaintiff's Motion for Partial Summary Judgment as to Affirmative Defense Nine is hereby **GRANTED**.

Finding that Plaintiff is not entitled to a grant of partial summary judgment on Counts III and IV and the above Affirmative Defenses, the Court declines to address whether plaintiff is entitled to a grant of summary judgment as to the remaining Affirmative Defenses.

## IV. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. I.Q. Data's Motion to Dismiss and Motion for Sanctions [DE 122] is **DENIED.**

2. Plaintiff's Motion for Partial Summary Judgment [DE 125] is **GRANTED IN PART AND DENIED IN PART** as follows**:**

    a. Plaintiff's Motion for Partial Summary Judgment as to Count III and Count IV is **DENIED**.

    b. Plaintiff's Motion for Partial Summary Judgment as to Affirmative Defenses Seven, Eight, Nine, Ten, and Eleven is hereby **GRANTED**.

3. The parties are hereby reminded that the Mandatory Pretrial Stipulation must be filed on or before November 15, 2024. *See* [DE 30] at p. 2.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of October 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record